# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARJORY L. MILLER, | : | |
| | : | 1:08-cv-1399 |
| Plaintiff | : | |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

Before the Court is Defendant United States of America's motion to dismiss Plaintiff Marjory J. Miller's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). (Doc. No. 15.) Defendant argues that Plaintiff's complaint, which seeks recovery under the Federal Tort Claims Act ("FTCA") for injuries sustained at Gettysburg National Military Park, should be dismissed for lack of subject matter jurisdiction due to the FTCA's discretionary function exception or for failure to state a claim due to Pennsylvania's Recreational Use of Land and Water Act ("RULWA"). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted.

## I. BACKGROUND

On May 22, 2005, Marjory J. Miller ("Plaintiff") visited Gettysburg National Military Park ("the Park") in Gettysburg, Pennsylvania. The Park is an admission-free, publicly accessible historic park managed by the National Park Service, a division of the United States Department of the Interior. (Latschar Decl. ¶ 15.) An average of 1.6 million people visit the Park annually. (Latschar Decl. ¶ 2.) The mission of the Park is to "preserve and interpret the historic setting of the Battle of Gettysburg." (Latschar Decl. ¶ 2.) To achieve that mission, the Park is

managed pursuant to directives and guidelines set out in a General Management Plan, the Management Policies Manual, various Director's Orders, and a Park Service Sign Manual. All of these policies are informed by the Park Service Organic Act, 16 U.S.C. § 1, which directs the Park Service to preserve "the scenery and the natural and historic objects and wild life" in a manner that "will leave them unimpaired for the enjoyment of future generations." (Latschar Decl. ¶ 10.) The Management Policies 2001 Manual[1] emphasizes that "the saving of human life will take precedence over all other management actions," but also states that "[t]he means by which public safety concerns are to be addressed is left to the decision of superintendents and other decision-makers at the park level. . . . Examples include decisions about whether to install warning signs . . . or install guardrails and fences." (Latschar Decl. ¶ 11.) The Manual further explains that "[s]ome forms of visitor safeguards–such as fences, railings and paved walking surfaces–typically found in other public venues may not be appropriate in a national park setting." (Id.) These missions and guidelines were all in place at the time of Plaintiff's visit to the Park.

  While visiting the Park, Plaintiff approached the Pennsylvania Monument, a commemorative monument located near Hancock Avenue. (Comp. ¶ 8; Latschar Decl. ¶ 4.) From the Pennsylvania Monument, Plaintiff "walked along a sidewalk [and] crossed over a grate at the junction of the sidewalk[,] which had been placed over a paved drainage ditch," to get a closer view of the Army of the Potomac Artillery Reserve Monument. (Comp. ¶ 8.) She proceeded across the road toward the Army of the Potomac Artillery Reserve Monument but fell

---

[1] The Management Policies 2001 Manual is the version of the Management Policies Manual in effect at the time of Plaintiff's injury. (Latschar Decl. ¶ 6.)

into a second drainage ditch on the opposite side of the road that did not have any crossover path or grated covering. (Comp. ¶ 8-9.) The ditch into which Plaintiff fell, paved in the same color and material as the roadway, is approximately twenty-four inches wide and eight and one-half inches deep. (Comp. ¶ 9.) As a result of the fall, Plaintiff sustained serious injuries to her head, right tibial plateau, and popliteal artery. (Comp. ¶ 11.) The injuries required emergency treatment, multiple hospitalizations and surgeries, and extended leave from her employment. (Comp. ¶¶ 11-12.) Plaintiff's complaint alleges that the injuries were proximately caused by Defendant's negligence in that the Park did not provide adequate cautionary measures, including a crossover path to the Army of the Potomac Artillery Reserve Monument or a sign to alert visitors of the hazardous ditch.

The United States admits that there were no warning signs or pathway coverings over the drainage ditch located near the Army of the Potomac Artillery Reserve Monument, but argues that the Park superintendent had discretion not to implement safety measures at the site of Plaintiff's injury, and therefore this Court lacks jurisdiction to hear the case due to the FTCA's discretionary function exception. Alternatively, the United States argues that Pennsylvania's RULWA bars the claim. Because the Court finds that the Park's decision not to install a crossover grate or warning sign over the ditch falls within the discretionary function exception to the FTCA, it will not consider Defendant's RULWA argument.

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) does not necessarily follow the same standard of review as the more often considered 12(b)(6) motion. If the challenge to subject matter jurisdiction relies on a facial attack

of the pleadings, "the court must consider the allegations of the complaint as true," as it would with a motion to dismiss under 12(b)(6). Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A motion that challenges "the existence of subject matter jurisdiction in fact, quite apart from any pleadings," however, does not require a court to consider all allegations of the complaint as true because the court must weigh the evidence to ensure that it has the power to hear the case. Mortensen, 549 F.2d at 891 ("In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). In such case where the existence of subject-matter jurisdiction is attacked in fact, the plaintiff, not the moving party, has the burden of proof that the court has jurisdiction over the controversy before it. Id.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while this standard does not require "detailed factual allegations," there

4

must be a "'showing,' rather than a blanket assertion of entitlement to relief . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level'" in order to survive a 12(b)(6) motion to dismiss. Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

### III. DISCUSSION

Plaintiff's injuries allegedly occurred during a visit to Gettysburg National Military Park on property owned by the federal government. Yet, the United States has immunity from lawsuits "unless it consents to be sued." Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008). By virtue of the FTCA, Congress has consented to liability for damages suits against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Congress has, however, limited the FTCA's broad waiver of sovereign immunity through various exceptions to the FTCA, such as the discretionary function exception, at issue in this case. 28 U.S.C. § 2680(a). The discretionary function exception provides that the United States will not held liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The intended purpose of the exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political

policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323 (1991).

The Supreme Court has fashioned a two-part test ("Gaubert test") to determine whether the discretionary function exception applies to a particular case. See Gaubert, 499 U.S. at 322-23. For the first step, "a court must determine whether the act giving rise to the alleged injury and thus the suit involves an element of judgment or choice." Merando, 517 F.3d at 164 (internal quotations omitted). Then, "even if the challenged conduct involves an element of judgment, the court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 165. Yet, if analysis of the first step has determined that a regulation "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. Moreover, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. The decision in question need not actually result from a policy analysis, rather, it need only be susceptible to such analysis. Id. at 324-25 ("The focus of the inquiry is not on the agent's subjective intent . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis.").

The challenged conduct in this case is the application of the Park Service's general policies as articulated in the Park Service Organic Act, the Park's General Management Plan, and the Management Policies Manual, which resulted in a failure to place a warning sign near or a crosswalk over the drainage ditch on one side of Hancock Avenue ("the decision"), despite the placement of a grated crosswalk over a similar ditch on the opposite side of the road.

6

See Merando, 517 F.3d at 165 (citing Cestonaro v. United States, 211 F.3d 749, 753 (3d Cir. 2000) (requiring identification of the conduct at issue before conducting the Gaubert two-part test)). Plaintiff admits that, under the first step of the Gaubert test, an element of choice or discretion was involved in the decision because "specific safety measures at the Gettysburg National Military Park are not prescribed under any statutory, regulatory, or policy-driven scheme." (Doc. No. 19 at 6.) Plaintiff's argument focuses on the second part of the test. She argues that the discretionary function exception does not apply because "there is no apparent rationale as to why some monuments had safe pathways and others did not" and "Defendant has not and cannot point to . . . evidence demonstrating that Park Officials contemplated competing policy considerations." (Id. at 6, 14.)

Plaintiff's argument fails because Defendant's evidence demonstrates, particularly in light of the Gaubert presumption[2], that the decision is susceptible to policy analysis, and Plaintiff has provided no evidence to rebut Defendant's contentions. Defendant has submitted evidence that the mission of the Park is to "preserve the topographic, landscape, and cultural features that

---

[2]It is unclear whether the Gaubert presumption automatically shifts the burden to Plaintiff to prove the decision is not grounded in policy considerations. The Third Circuit Court of Appeals has suggested that once the first part of the Gaubert test is established, the burden shifts to Plaintiff to rebut the presumption that the discretionary decision is grounded in policy concerns, though it did not consider the issue at length. See Cestonaro, 211 F.3d at 755 n.4 ("We are mindful that when established government policy . . . allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. That presumption, however, can be rebutted." (Internal citations omitted)). Other circuits require more from the defendant, despite the Supreme Court's strong language that a presumption attaches once the first part of the Gaubert test is met. See Terbush v. United States, 516 F.3d 1125, 1134-35 (9th Cir. 2008) (acknowledging the Supreme Court's explicit statements regarding a presumption, but requiring a defendant to proffer some evidence that a discretionary decision is policy-based so that the presumption does not eviscerate the second prong of the Gaubert test).

7

were significant to the outcome of the Battle of Gettysburg," which includes the "commemorative landscape of avenues and monuments." (Latschar Decl. ¶ 2; Doc. No. 17 at iii). In addition to the Park's overall mission, the Park's General Management Plan, published in 1999 but detailing several forward-looking alternatives for Park management, discusses the importance of preserving the commemorative monuments and avenues, as well as preventing erosion and landscape damage around those Park elements. (Doc. No. 17, at 3, 6, 11-12, 86.) Together, these policies sufficiently demonstrate that the decision not to provide coverings or signs around potential hazards near commemorative monuments is susceptible to a policy analysis, with the underlying policies being the economic concerns inherent in placing signs and coverings over every potential hazard throughout a nearly 6,000 acre park, as well as the environmental and aesthetic concerns of maintaining the historical integrity of the Park's landscape and initial commemorative features.

Plaintiff's brief supports this finding. She explicitly states that consideration of factors such as "allocation of funds," "aesthetic impact," and "visitor safety" should have been balanced in arriving at the decision; she simply objects to the outcome of the decision as an arbitrary application of those competing policy considerations. (Doc. No. 19 at 8.) Yet, the correctness of the Park superintendent's decision speaks only to the merits of the underlying negligence action and is not a relevant consideration at this point. Any court evaluation of the Park's decision would constitute the precise type of judicial second-guessing that the discretionary function exception was enacted to prevent. <u>Gaubert</u>, 499 U.S. at 323.

Plaintiff also challenges the application of the discretionary function exception on the basis that the Park superintendent did not actually engage in the pertinent policy considerations

to determine which ditches to cover or where to place warning signs. She argues that "Defendant has not and cannot point to a shred of objective, contemporaneous evidence demonstrating that Park Officials contemplated competing policy considerations." (Doc. No. 19 at 14.) This argument is unavailing, however, because the Gaubert test only requires that a decision be *susceptible* to the policy considerations underlying the discretionary function exception. Gaubert, 499 U.S. at 325; Gotha v. United States, 115 F.3d 176, 180 (3d Cir. 1997) ("The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion." (quoting Smith v. Johns-Manville Corp., 795 F.2d 301, 308-09 (3d Cir. 1986))); Cope v. Scott, 45 F.3d 445, 449 (D.C. Cir. 1995) ("The issue is not the decision as such, but whether the 'nature' of the decision implicates policy analysis."); Unorthlight Harbor, LLC v. United States, 561 F. Supp. 2d 517, 527 (D.N.J. 2008). As stated, the policies and guidelines put forth by Defendant demonstrate that the decision where and if to put signs and safety features along the historic routes and amid battlefield grounds is precisely the type of discretionary decision that requires the Park Service to balance conflicting policy concerns[3]. Defendant has,

---

[3]Several other courts have found that decisions regarding placement of warning signs and safety features within national parks, like the one at bar, are within the ambit of the discretionary function exception. E.g., Mitchell v. United States, 225 F.3d 361 (3d Cir. 2000) (decision not to repair culvert-head wall at Delaware Water Gap National Recreation Area within discretionary function exception); Elder v. United States, 312 F.3d 1172 (10th Cir. 2002) (decision not to have sign warning of slippery rocks where several park visitors had slipped and fallen to their deaths within discretionary function exception); Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1999) (decision not to install handrails or warning signs in favor of maintaining authenticity of historical entranceway within discretionary function exception); Davis v. United States, 918 F. Supp. 368, 373 (N.D. Fla. 1996) ("[D]ecision regarding warning signs at Battery Langdon Park is the type of activity 'Congress intended to shield from tort liability.'"). While some courts have come out differently, those cases are distinguishable primarily in that they "involve[d] safety considerations under an established policy rather than the balancing of competing policy

9

then, met its burden of demonstrating that the decision meets the Gaubert test and is within the discretionary function exception. Defendant need not proffer evidence of the actual decision-making process.

Accordingly, the Park Service's decision not to place a covering or warning sign over the ditch in question is not actionable because it falls within the discretionary function exception to the FTCA and this Court lacks jurisdiction to hear the case.

**IV.     CONCLUSION**

The Court finds that the Gettysburg National Military Park superintendent's decision not to install warnings signs or a grated crossover path near the Army of the Potomac Artillery Reserve Monument was discretionary and is the type of decision grounded in relevant social and economic policy considerations, which brings it within the discretionary function exception of the FTCA. As such, the United States has not waived immunity from suit for the negligent act alleged in Plaintiff's complaint, and Plaintiff's claim will be dismissed for want of subject matter jurisdiction. Because the Court lacks jurisdiction to consider Plaintiff's claims under the FTCA, the case will be dismissed without consideration as to whether Pennsylvania's RULWA applies.

An order consistent with this memorandum follows.

---

considerations" or were "mundane, administrative, garden-variety, housekeeping problem[s]." Mitchell v. United States, 225 F.3d 361, 364 (3d Cir. 2000) (quoting ARA Leisure Servs. v. United States, 831 F.2d 193, 195 (9th Cir. 1987) (decision not to install guard rails along Denali Park Road within the discretionary function exception, but decision not to maintain a section of the road in a safe condition outside discretionary function exception) and Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997) (Navy's failure to install handrail not within exception)).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARJORY L. MILLER,** | : | |
| | : | 1:08-cv-1399 |
| Plaintiff | : | |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| Defendant | : | |
| | : | |

## **ORDER**

**AND NOW**, this 29th day of July 2009, upon consideration of Defendant's motion to dismiss pursuant to 12(b)(1) for lack of subject matter jurisdiction (Doc. No. 15), **IT IS HEREBY ORDERED** that the motion is **granted.** The Clerk of Court is directed to close the case.

                                              s/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania